Case number 15-7077, Newco Limited v. Government of Belize Appellate. Mr. Basobrero for the appellate, Mr. Bull for the appellate. Mr. Basobrero for the appellate, Mr. Bull for the appellate. Good morning, I thought we'd just wait until the room clears. Mr. Basobrero for the appellate, Mr. Bull for the appellate. Good morning. Good morning, Your Honor. Juan Basobrero for the Government of Belize. In this case, it's undisputed that Newco is a Belizean company. And the reason why they came to the U.S. to confirm the award here is because they don't want to pay the taxes they owe to the Government of Belize. Here in the U.S., they can get paid on the award, and the Government of Belize cannot deduct the taxes because of the revenue rule. The decision of the district court is in conflict with the decision of the Supreme Court of Belize, which held instead that the Government of Belize was obligated to deduct those taxes. Can I just be clear? They're here, as I understand it, I don't know all the underlying motivations they may have had, but they're here because of an arbitration clause where they're seeking to enforce the award. Now, whether or not the Government of Belize can, in some manner, collect taxes, it seems to me, is a different question. It's not, and if I can explain why. I understand the beauty of what you're trying to say, but I don't understand why the government would be forever barred. And we don't have to get into this, but I just want you to know that that gave me some pause in reading the briefs. Well, as a practical matter, if the money is paid in the United States, it's never going to reach Belize. And therefore, the government's never going to be able to collect this portion of these funds. So that's just a practical argument. And the government is obligated, according to the Belize Supreme Court, to deduct those taxes. So the government cannot pay in the United States without violating the order of the Supreme Court of Belize. It cannot pay in Belize without violating the order of the district court. The government wants to pay. This is not a case where the government's saying we're not going to pay the award, but we've been told by our Supreme Court that we've got to deduct the taxes owed. So what do we do in that situation? I think there are three ways out. One of them is the New York Convention, the public policy defense. The district court should have denied confirmation based on the public policy defense. What's the public policy? It's no secret. You know, we hear it all the time. There are two certain things in the U.S., debt and taxes. We clearly have a policy in the U.S. government that taxpayers should pay their taxes. By coming to the United States, we're enabling NUCCO to avoid their tax obligation. Therefore, the New York Convention in the public policy defense, Article 5, 2B, provides a mechanism for a court finding this conflicting situation to deny confirmation, and that's what should have been done here. Without getting to the merits, there's another way out, which is forum 9 convenience. The difficulty that we have in respect to FNC is the TMR decision, a prior decision of this court. The district judge held that he was not going to get to the balancing test under FNC because under TMR energy, there's no adequate alternative forum. Why? Because TMR energy held that if you're suing to collect the money that the defendant or respondent may have in the U.S., you can't do that in a foreign court, and so there's no alternative forum. Now, we submit that that decision, which was a 2007 decision, is no longer good law after the Sino-Pem decision of the Supreme Court from two years later. And let me explain why. If you read that decision, the reasoning is quite simple. In that case, you have two foreign entities. One's the plaintiff's suit the defendant for damages in the United States. The Supreme Court said two things which are very important. Number one, the Supreme Court said that FNC applies only where the alternative forum is abroad. All other application of FNC in the United States has been displaced. That's the only application. Now, TMR can't be reconciled with that because TMR says if you sue for money in the United States, there's never an adequate alternative forum somewhere else because a foreign court cannot attach assets in the U.S. There's really no way to reconcile these two decisions. And the Supreme Court, Justice Ginsburg, also said in the Sino-Pem that that case presented, in quotes, a textbook example for application of FNC. So we submit that TMR energy cannot possibly be good law after Sino-Pem. Instead, this case is just like the Figueredo decision of the Second Circuit. I know that a prior panel decided not to take that into account, but that prior panel in BSDL didn't discuss these cases. They just ignored it. In the Second Circuit decision in Figueredo, you had the government of Peru, which was subject to a limitation in the law as to how it should pay an arbitration award rendered in Peru. There was a limit. Like the government of Belize, Peru was paying the award, but subject to a Peruvian law limit. The Second Circuit said Peruvian courts are inadequate forum because they can get paid something there. They're being paid. It's just being done under a legal scheme, a Peruvian legal scheme, that the plaintiff agreed to. Here, NUCO, a Belizean company, agreed to the Belizean legal scheme. Under Figueredo, really, this is a case that should have been dismissed on FNC grounds. Now, let me mention in this regard, as the court is aware, that the Supreme Court has expressed some interest, at least, in that conflict between the Second Circuit and TMR decision. I believe there's no conflict anymore because if you rule that C. Nocum has rendered TMR energy no longer good law. But I should note that in Figueredo, the United States government did submit a statement of interest. And they sided with Peru in that case. So it is the position of the U.S. government that FNC does apply under the New York Convention. And let me tell you why it applies. Because Article 3 of the New York Convention says so. It says confirmation actions are subject to local procedural laws. The last point I want to make relates to international comity. And to apply international comity, there must be an actual conflict. And as I mentioned, here, there is an actual conflict because the Belizean Supreme Court said you must deduct taxes. The district court here says you've got to pay regardless of the offset. Now, international comity is a bedrock principle of law applied in international relations. And that's why we're before you. Isn't the whole regime of arbitration, which is heavily favored in the United States under the Federal Arbitration Act, to avoid just this situation so you don't have to go back to the home country and get home cooking against you? I mean, it serves much the function that diversity jurisdiction does here. It provides a neutral forum to hear these disputes. That is partially right because the New York Convention in Article 5 2B requires courts to take into consideration public policy considerations. There is a public policy defense in the New York Convention. So we have to engage in this analysis. If there wasn't one, I think that would be a good point, but there is. So that's the only escape that you have is the public policy defense. I thought the public policy defense applied to courts of primary jurisdiction. No, it applies to the court in which you're seeking to confirm the award. So it would apply here. The question is public policy of the United States. Correct. I'm going to reserve the rest of the time for rebuttal. All right, good. Thank you. Good morning. May it please the court. Ryan Bull on behalf of NUCCO Limited. I want to start with the point of Belize that NUCCO is here because it's seeking to evade Belizean taxes, which is not true. But more importantly, under the decision that this court entered in TMR, our motive as a claimant is not material. And that's found at TMR 411F3 at 303. As Judge Rogers pointed out, we're here in the United States because Belize agreed to arbitrate a dispute in the United States. Belize agreed that that arbitration would be conducted under the procedural laws of the United States. Belize participated in that arbitration in the United States. It presented witnesses in the United States. It was free to make any arguments that it wanted to in that arbitration in the United States, including an argument that any award must be entered in Belizean dollars as opposed to U.S. dollars. It did not present any of those arguments. Rather, Belize, in fact, paid advance costs to the arbitration body of 168,000 U.S. dollars, which just confirms that its post hoc arguments that it can't pay a U.S. dollar award consistent with Belizean law are excuses to avoid an obligation that it's been seeking to avoid for the last eight years. I would submit that the revenue rule, in part, exists to protect Belize from challenges like what would come from us if we were presented with the need to address this tax ruling in this court. It protects Belize from the types of attacks that would necessarily come forward. And for that reason, just as Belize can't be attacked for its revenue rulings in its own borders, so too it can't collect on its revenue rulings in these borders. In terms of the TMR decision, counsel has submitted that SINOCHEM is somehow irreconcilable with the TMR decision. And I don't agree. SINOCHEM, the principle holding of SINOCHEM, of course, is that the court can address formal inconvenience in advance of addressing jurisdictional issues. And that's the core of the analysis. Yes, the court says that in dicta, noting past holdings, American dredging, that in the United States, formal inconvenience applies when one is talking about dismissal in favor of a foreign forum. Now, Section 1404 of the Code applies when we're talking about transfer of an inconvenient forum within the United States. In terms of the notion that this is a paradigm for formal inconvenience dismissal, yes, where the claim is for money damages. And as the court stated at page 435 and 436 of its opinion, the gravamen of the complaint is misrepresentations to a Chinese Admiralty court in the course of securing arrest of a vessel in China. That is an issue best left for Chinese courts. But contrary to what Belize represented in its briefs, SINOCHEM doesn't involve a case in which the parties are seeking attachment of assets in the United States in which only a U.S. court can act. Turning briefly to the issue of formal inconvenience, and actually I'm going to start a little bit more broadly and talk a little bit about Article 3 of the New York Convention. Because what I think both Belize here and the Monderey case in the Second Circuit, which actually applied to the New York Convention, Figueredo dealt with the Panama Convention, so it's a different language. What the parties there are disregarding is key language at the end of Article 3, which says that yes, rules of procedure of a court asked to enforce an arbitral award apply, but they do so, quote, under the conditions laid down below. And that language, parallel language, is not present in the Panama Convention. But that language must mean that you look to the conditions laid down below, and a rule of procedure of a domestic forum can only apply to the extent that it's consistent with the rules, the conditions laid down below. And you can't have application of formal inconvenience or comity in favor of a non-primary jurisdiction, as Belize is asking for here, consistent with those conditions that are set forth in Article 5.1.E and Article 6 of the Convention. What Article 5.1.E says is that when you are asked, court, of any signatory to the New York Convention, to defer or pay attention to the ruling of another court, you must satisfy two things. It has to be a court of one of two things. It has to be a court where the arbitration award was made, or it has to be a court of the jurisdiction under whose laws the arbitration was made. In both instances here, that's the United States. And that's what this court recognized in BSDL applying Article 6 of the Convention, which deals specifically with staying U.S. litigation in favor of such a forum. And the result that Belize would create here would allow parties in the circuit to obtain dismissal of a case in favor of a secondary jurisdiction like Belize, when under BSDL 1, the parties wouldn't be permitted to stay U.S. litigation pending resolution of that secondary jurisdiction proceeding. And that just doesn't make a lot of sense. A couple of final points, and then if there are any questions. I did want to note that, and the Court alluded to it in some of its questionings, the doctrine of comity is, in the first instance, something that the Supreme Court explained in Hilton at page 163, must be guided first and foremost by the treaties and statutes of this country. You only turn to the doctrine of comity after you have exhausted the resources that are available in the treaties and statutes. And here, as I've discussed, the New York Convention provides the answers to the question that Belize seeks. Finally, I did want to stress again the point that we made in our submission with respect to Belize's motion to stay the proceedings pending the Supreme Court determination in the BSDL case. Irrespective of TMR decision, which is dispositive of the forum nonconvenience issue in this case, and irrespective of the Article III of the New York Convention issue, in which we believe forum nonconvenience and comity aren't properly raised as defenses in a New York Convention case, here we have a situation where in no event would Belize be entitled to claim that the U.S. is an inconvenient forum after having agreed to arbitrate here, participated in arbitration here, and agreed that in the underlying contract that an implementation of any award may be had in any jurisdiction where Belize or its assets are located. And we would submit that on that basis, even if the Supreme Court were to reach a different result than TMR, and even if the Supreme Court were to say that Article III permits reliance on forum nonconvenience or comity, this case would still mandate affirmation of the decision below. Thank you. The distinction between primary and secondary jurisdiction has nothing to do with Article III or Article V. It relates only to Article VI, which deals with staying of an action. There's a reason for that. A U.S. court should stay an action if a court of primary jurisdiction can vacate the award. But if it's not primary jurisdiction, the foreign forum, then you don't need to stay it because you are equals. But that has nothing to do with Article III or Article V, which deal with confirmation of the award. And I would just refer that to Article III, which is clear that it says confirmation is dependent on the rules of procedure of the territory where the award is being relied upon. The award is being relied upon here. FNC applies. It's one of our rules of procedure. With respect to Sinochem, this is not dicta. I would urge the court just to read that decision. The core of that decision is that FNC applies only where a foreign forum is abroad. That plaintiff saw damages here, the Supreme Court said, because this whole dispute involves China and Malaysia. Like this whole dispute involves Belize. This is a textbook example for FNC application, and so is this case. All right. Thank you. Thank you.
judges: Rogers, Griffith, Kavanaugh